Perry R. Clark (SB No. 197101), pclark@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone:     (415) 439-1400
Facsimile:     (415) 439-1500

William A. Streff, Jr., P.C. (IL SB No. 2753979), wstreff@kirkland.com
William E. Devitt, P.C. (Admitted *Pro Hac Vice*), wdevitt@kirkland.com
Mark Varboncouer (Admitted *Pro Hac Vice*), mvarboncouer@kirkland.com
Matthew J. Hertko (Admitted *Pro Hac Vice*), mhertko@kirkland.com
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

*Attorneys for Hitachi, Ltd., Hitachi America, Ltd., Hitachi Data*
*Systems Corporation, and Hitachi Computer Products (America), Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| **LG ELECTRONICS, INC.,** ) | **Case No. C 07-06511 CW** |
| **Plaintiff/Counterclaim Defendant,** ) | **The Honorable Claudia Wilken** |
| **v.** ) | **Hearing:  February 26, 2009 at 2:00 pm** |
| **HITACHI, LTD.,** ) | |
| **HITACHI AMERICA, LTD.,** ) | **DEFENDANTS' MOTION FOR** |
| **HITACHI DATA SYSTEMS CORPORATION,** ) | **PARTIAL SUMMARY JUDGMENT** |
| **and HITACHI COMPUTER PRODUCTS** ) | **BASED UPON PATENT** |
| **(AMERICA), INC.,** ) | **EXHAUSTION** |
| **Defendants/Counterclaim Plaintiffs.** ) | **DEMAND FOR JURY TRIAL** |

## <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION AND STATEMENT OF ISSUES** .....................................................1

II.   **STATEMENT OF FACTS**..........................................................................................2

      A.    The LGE Patents-in-Suit in this Case Have a Long History Before this Court, and the Exhaustion Issue Relating to Intel Components has been Decided by the Supreme Court. ....................................................................2

      B.    The Exact Same Agreement Between LGE and Intel that was at Issue in the Quanta Litigation is at Issue in this Case................................................4

      C.    LGE's Infringement Contentions Identify Hitachi Products that Incorporate Intel Components. ............................................................................5

III.   **LEGAL STANDARD FOR SUMMARY JUDGMENT**..................................................7

IV.  **ARGUMENT** ......................................................................................................7

      A.    Collateral Estoppel Bars LGE from Relitigating Infringement by Intel Components. ............................................................................................8

            1.    The Supreme Court Issued a Final Judgment that LGE's Patent Rights in All Intel Components Sold Pursuant to the License Agreement Were Exhausted.............................................................9

            2.    LGE Now Seeks to Impermissibly Relitigate the Identical Issue of Whether Its Patent Rights in the Intel Components Are Exhausted. ..........9

      B.    Under *Quanta*, LGE's Patent Rights are Exhausted by Intel's Authorized Sales of Components that Substantially Embody the Asserted Patents. .........................11

            1.    Exhaustion Turns on Whether the Patent Owner has Authorized the Sale of a Product that Substantially Embodies the U.S. Patent—Not Where the Sale Took Place. ........................................................12

            2.    The Federal Circuit's *Jazz Photo* Decision Does Not Establish that only U.S. Sales Can Exhaust Patent Rights. ..............................................15

            3.    LGE's Foreign-Sales Argument is Logically Flawed, Contrary to Law, and is an Attempt to End-Run Around Patent Exhaustion. .......................17

      C.    Even if this Court Determines that Only Sales Occurring in the U.S. Can Exhaust Patent Rights, LGE's Patent Rights are Exhausted by Virtue of the Master and License Agreements. ..........................................................20

V.    **CONCLUSION** ...................................................................................................22

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Adams v. Burke*,
   84 U.S. (17 Wall.) 453 (1873) ........................................................... 12, 13

4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................... 7

5

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   365 U.S. 336 (1961) ................................................................................. 16

6

7

*Boesch v. Graff*,
   133 U.S. 697 (1890) ................................................................................. 16

8

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ............................................................... 18

9

10

*Curtiss Aeroplane & Motor Corp. v. United Aircraft Eng'g Corp.*,
   266 F. 71 (2d Cir. 1920) ..................................................................... 13, 14

11

*Cyrix Corp. v. Intel Corp.*,
   803 F. Supp. 1200 (E.D. Tex. 1992) ........................................................ 20

12

13

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) ............................................................... 18

14

*Engel Indus., Inc. v. Lockformer Co.*,
   166 F.3d 1379 (Fed. Cir. 1999) ................................................................. 9

15

16

*Hobbie v. Jennison*,
   149 U.S. 355 (1893) ................................................................................. 13

17

*Jazz Photo Corp. v. Int'l Trade Comm'n*,
   264 F.3d 1094 (Fed. Cir. 2001) ........................................................... 15, 16

18

19

*Kabushiki Kaisha Hattori Seiko v. Refac Tech. Dev. Corp.*,
   690 F. Supp. 1339 (S.D.N.Y. 1988) ..................................................... 14, 19

20

*Kamilche Co. v. United States*,
   53 F.3d 1059 (9th Cir. 1995) ............................................................... 10, 11

21

22

*Kamilche Co. v. United States*,
   75 F.3d 1391 (9th Cir. 1996) ................................................................... 10

23

*Keeler v. Standard Folding-Bed Co.*,
   157 U.S. 659 (1895) ........................................................................... 13, 21

24

25

*LG Elecs. v. Bizcom Elecs., Inc*,
   453 F.3d 1364 (Fed. Cir. 2006) ............................................................... 20

26

*LG Elecs., Inc. v. Asustek Computer, Inc.*,
   No. 01-cv-00326, 2002 WL 31996860 (N.D. Cal. Aug 20, 2002) ............ 3, 19, 20

27

28

*LG Elecs., Inc. v. Asustek Computer, Inc.*,
    248 F.Supp.2d 912 (N.D. Cal. 2003) .................................................................... 3, 21

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    128 S. Ct. 28 (2007) (Order granting petition for *certiorari*) ................................. 3

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    128 S.Ct. 2109 (2008) ...................................................................................... passim

*Sanofi S.A. v. Med-Tech Veterinarian Prods., Inc.*,
    565 F. Supp. 931 (D.N.J. 1983) .......................................................................... 14

*Starker v. United States*,
    602 F.2d 1341 (9th Cir. 1979) ............................................................................ 11

*STMicroelecs., Inc. v. Sandisk Corp.*,
    No. 4:05-cv-45, 2007 WL 951655 (E.D. Tex. Mar. 26, 2007) ...................... 17, 20

*Syverson v. Int'l Bus. Machs. Corp.*,
    472 F.3d 1072 (9th Cir. 2007) .............................................................................. 9

*T.W. Elec. Serv. v. Pac. Elec. Contractors*,
    809 F.2d 626 (9th Cir. 1987) ............................................................................... 7

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) ............................................................................. 7

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    No. 3:05-cv-2316-K, 2008 WL 2152027  (N.D. Tex. 2008) ............................... 20

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ................................................................................. 8

*United States v. Masonite Corp.*,
    316 U.S. 265 (1942) ........................................................................................... 20

*United States v. Univis Lens Co.*,
    316 U.S. 241 (1942) ....................................................................................... 3, 14

*Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*,
    479 F. Supp. 2d 388 (S.D.N.Y. 2007) ................................................................ 18

*Yamaha Corp. of Am. v. United States*,
    961 F.2d 245 (D.C. Cir. 1992) ............................................................................ 11

**STATUTES**

35 U.S.C. § 271 ........................................................................................................ 11

35 U.S.C. § 271(b) ................................................................................................... 18

**RULES**

Federal Rule of Civil Procedure 56 ........................................................................... 1

Federal Rule of Civil Procedure 56(c) ............................................................. 7

Federal Rule of Civil Procedure 56(e) ............................................................. 7

**TREATISES**

1B Moore's Federal Practice ¶ 0.443[2]........................................................ 11

Restatement (Second) of Judgments § 27 ....................................................... 11

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF LG ELECTRONICS, INC. ("LGE") AND ITS ATTORNEYS: PLEASE TAKE NOTICE that on February 26, 2009, at 2:00 pm, or as soon thereafter as the matter may be heard before the Honorable Claudia Wilken, defendants and counterclaimants Hitachi, Ltd., Hitachi America, Ltd., Hitachi Data Systems Corporation, and Hitachi Computer Products (America), Inc. (collectively "the Hitachi Defendants") will and hereby do move for Partial Summary Judgment Based upon Patent Exhaustion pursuant to Federal Rule of Civil Procedure 56.

The Hitachi Defendants move for partial summary judgment with respect to a subset of the Hitachi accused products at issue in this case, based upon the exhaustion of LGE's patent rights in Intel components incorporated in those products that substantially embody the asserted patents.  This motion is based upon this Notice and Memorandum of Points and Authorities, the supporting Declaration and exhibits thereto, and all pleadings and materials on file herein.  For purposes of this Motion only, the Hitachi Defendants rely upon LGE's infringement contentions as presented by LGE.  The Hitachi Defendants expressly reserve the right to contest all of LGE's infringement contentions and to assert non-infringement defenses regarding any and all of the Hitachi products accused of infringement, invalidity defenses regarding each of the LGE patents-in-suit, and any and all other available defenses in this litigation or any future proceeding.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND STATEMENT OF ISSUES**

Despite a unanimous ruling by the United States Supreme Court that its patent rights in Intel components have been exhausted, LGE nonetheless continues to assert that the Hitachi Defendants have infringed four of its patents by incorporating licensed Intel components that substantially embody the asserted LGE patents.  LGE claims that its patent rights are not exhausted because only U.S. sales of the Intel components—and not foreign sales—exhaust its patent rights.  This sophistry attempts to end-run the doctrine of patent exhaustion, which is the kind of argument the Supreme Court has strongly denounced and rejected.  The Supreme Court has already issued a final ruling on

the exhaustion issue with respect to Intel components substantially embodying LGE patents licensed under the LGE-Intel license agreement, and thus LGE is collaterally estopped from alleging infringement based upon Intel components that were sold pursuant to that agreement. Moreover, Intel was authorized—and has an unrestricted license—to make, use, sell, and import the components that the Hitachi Defendants incorporated into the Hitachi accused products at issue here. Intel's authorized sales of components that substantially embody the LGE patents exhausted LGE's patent rights in those components. Finally, even assuming *arguendo* that the doctrine of patent exhaustion includes a territorial restriction on the first sale, LGE's license to Intel— ███████████ ████████████████████████████████████ ████████████████—constitutes a first sale in the United States for purposes of the doctrine of patent exhaustion regardless of where the components were thereafter delivered by Intel. Accordingly, the Hitachi Defendants are entitled to summary judgment that its products incorporating Intel components do not infringe the LGE patents-in-suit.

## II.   STATEMENT OF FACTS

### A.   The LGE Patents-in-Suit in this Case Have a Long History Before this Court, and the Exhaustion Issue Relating to Intel Components has been Decided by the Supreme Court.

This Court is very familiar with the patents-in-suit in this case.[1] LGE has been litigating these patents in this Court for over seven years against various defendants in several consolidated cases, including its recently-settled litigation against Quanta Computer, Inc. ("the Quanta Litigation").[2] In the Quanta Litigation, LGE alleged that the defendants' products that incorporated

---

[1] In the present case, LGE has asserted four patents—U.S. Patent Nos. 4,918,645 ("the '645 patent"); 4,939,641 ("the '641 patent"); 5,077,733 ("the '733 patent"); and 5,379,379 ("the '379 patent") (collectively the "LGE patents-in-suit")—against the Hitachi Defendants.

[2] The Quanta Litigation, case no. 01-cv-2187 CW (N.D. Cal. filed Apr. 16, 2001), was consolidated with the following five cases: *LG Elecs., Inc. v. Asustek Computer Inc.*, C 01-00326 CW (docketed Jan. 18, 2001 after transfer from the E.D. Va.); *LG Elecs., Inc. v. Everex Sys., Inc.*, C 01-01552 CW (N.D. Cal. docketed Feb. 6, 2001 after transfer from the E.D. Va.); *LG Elecs., Inc. v. Advance Creative Computer Corp.*, C 01-01070 CW (N.D. Cal. docketed Mar. 15, 2001 after transfer from the E.D. Va.); *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, C 01-01375 CW (N.D. Cal. filed Apr. 6, 2001); and *LG Elecs., Inc. v. First Int'l Computer Inc.*, C 01-01594 CW (N.D. Cal. docketed Apr. 24, 2001 after transfer from the D.N.J.).

Intel components infringed various LGE patents, as LGE has done in this case. This Court granted summary judgment in favor of Quanta and the other defendants, ruling that LGE's rights in the Intel components incorporated into the defendants' accused products were exhausted. *See LG Elecs., Inc. v. Asustek Computer, Inc.*, No. 01-cv-00326, 2002 WL 31996860 (N.D. Cal. Aug 20, 2002); *LG Elecs., Inc. v. Asustek Computer, Inc.*, 248 F.Supp.2d 912 (N.D. Cal. 2003). After the Federal Circuit reversed the ruling on patent exhaustion, the Supreme Court granted the defendants' petition for *certiorari* on that issue. *Quanta Computer, Inc. v. LG Elecs., Inc.*, 128 S. Ct. 28 (2007) (Order granting petition for *certiorari*).[3]

On June 9, 2008, the Supreme Court reversed the Federal Circuit and unanimously held that "[b]ecause Intel was authorized to sell its products to Quanta, the doctrine of patent exhaustion prevents LGE from further asserting its patent rights with respect to the patents substantially embodied by those products." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 128 S.Ct. 2109, 2122 (2008). As an initial matter, the Supreme Court held that patent exhaustion applies to method claims as well as apparatus claims. *Id.* at 2117-18. The Supreme Court then relied on its earlier decision of *United States v. Univis Lens Co.*, 316 U.S. 241 (1942)—upon which this Court relied in originally granting summary judgment in favor of the defendants in the Quanta Litigation but to which the Federal Circuit did not cite in its opinion—and held that the sale of Intel components satisfied both the "substantial embodiment" and the "authorization" elements of the patent exhaustion doctrine. Specifically, the Court held that the Intel components "substantially embod[y] the patent because the only step necessary to practice the patent is the application of common processes or the addition of standard parts." *Quanta*, 128 S.Ct. at 2120. The Supreme Court noted that "exhaustion turns only on Intel's own license to sell products practicing the LGE Patents" and held that because the license from LGE to Intel authorized Intel to sell patented products to third parties without any limitations

---

[3] This Court's original rulings in 2002 and 2003 and the Federal Circuit's ruling addressed, *inter alia*, all four LGE patents asserted against the Hitachi Defendants, but LGE had dropped its allegations relating to the '645 patent in the Quanta Litigation by the time the case reached the Supreme Court. The Supreme Court's ruling, however, applies equally to all four LGE patents-in-suit in this case, because LGE's own infringement contentions regarding the accused Hitachi products allege that Intel components satisfy the limitations of the asserted claims of all four LGE patents-in-suit here. *See* Hertko Decl., Exs. G, H, I, & J.

1    (territorial or otherwise), LGE's rights in such products with respect to the patents in suit were

2    exhausted.  *Id*. at 2122.

3         Despite the Supreme Court's ruling, LGE subsequently argued that all issues in the case had

4    not yet been resolved because *Quanta* did not address whether LGE's rights were exhausted with

5    respect to Intel components sold abroad.  *See* Hertko Decl., Ex. B.  Quanta filed a renewed motion

6    for summary judgment in this Court, and LGE raised the foreign-sales issue in its response.  *See*

7    Hertko Decl., Ex. C, at 5-14.  Although the Quanta Litigation settled, this Court issued a tentative

8    ruling in which it reinstated its previous judgment in favor of the defendants.  *See* Hertko Decl., Ex.

9    D.  This Court ruled that despite LGE's assertions to the contrary, the Supreme Court's decision had

10   resolved the issues between the parties regarding Intel components, noting that "the Supreme Court

11   reversed the Federal Circuit's judgment [and] did not remand the case to the Federal Circuit or to this

12   Court for any further proceedings."  *Id*. at 6.

13   **B.    The Exact Same Agreement Between LGE and Intel that was at Issue in the**
     **Quanta Litigation is at Issue in this Case.**

14
15   The basis for the Hitachi Defendants' exhaustion defense with respect to Intel components in

16   this case is the very agreement that was at issue in the Quanta Litigation—

17
18
19
20
21
22
23
24
25
26
27
28

[REDACTED]

At the same time that they entered into the License Agreement, Intel and LGE entered into a separate Master Agreement [REDACTED]

### C.    LGE's Infringement Contentions Identify Hitachi Products that Incorporate Intel Components.

On April 29, 2008 and August 29, 2008, LGE served its "Disclosure of Asserted Claims and Preliminary Infringement Contentions" for the '641, '733, and '379 patents, and the '645 patent, respectively (collectively "LGE's Infringement Contentions"), identifying the Hitachi products alleged to infringe.  *See* Hertko Decl., ¶ 8.  For a subset of the accused Hitachi products—which are indicated in the table below ("the Hitachi Accused Instrumentalities")—LGE's infringement allegations are based exclusively upon Intel components purchased from Intel or its authorized distributors and incorporated into the Hitachi products.  *See* Hertko Decl., Exs. G, H, I, & J.  For these products, LGE has not identified any non-Intel chipsets or microprocessors.  *Id.*[5]

For purposes of this Motion and based solely upon LGE's Infringement Contentions, the Hitachi Defendants do not dispute LGE's allegations that the Intel components identified by LGE and incorporated into the Hitachi Accused Instrumentalities shown below substantially embody the LGE patents-in-suit.  *See* Patent L.R. 3-1(c).  Each of LGE's claim charts for the products and respective patents shown in the table below discuss, albeit in general terms, the role of Intel components in the operation of the alleged inventions of the respective LGE patents-in-suit.  *See*

[REDACTED]

---

[5] LGE's Infringement Contentions also accuse Hitachi products for which non-Intel components—either exclusively or together with Intel components—have been identified by LGE as forming a basis for its infringement allegations. Those products, however, are not addressed in the present Motion—although the Hitachi Defendants contend that exhaustion applies to other such components and products.

Hertko Decl., Exs. G, H, I, & J.  Notwithstanding this Motion, the Hitachi Defendants maintain that their products do not infringe the LGE patents-in-suit, and they specifically deny that their products and the Intel components incorporated therein operate in the manner described by LGE in the claim charts submitted with LGE's Infringement Contentions.  Accordingly, the Hitachi Defendants expressly reserve the right to assert non-infringement positions based upon the technical operation of the Intel components or to otherwise contest LGE's infringement contentions.  *See* Hertko Decl., Ex. K, at 7-8.

| '645 Patent | '641 Patent | '733 Patent | '379 Patent |
|---|---|---|---|
| Hitachi BladeSymphony 1000 Server Modules (Models AX51A2, AX51A3, AX51A4, AX51V2, AX51V3, AX51V4) | Hitachi BladeSymphony 1000 Server Modules (Models AX51A2, AX51A3, AX51A4, AX51V2, AX51V3, AX51V4) | Hitachi BladeSymphony 1000 Server Modules (Models AX51A2, AX51A3, AX51A4, AX51V2, AX51V3, AX51V4) | Hitachi BladeSymphony 1000 Server Modules (Models AX51A2, AX51A3, AX51A4, AX51V2, AX51V3, AX51V4) |
| Hitachi BladeSymphony 320 Server Modules | Hitachi BladeSymphony 320 Server Modules | Hitachi BladeSymphony 320 Server Modules | Hitachi BladeSymphony 320 Server Modules |
| Hitachi BladeSymphony 1000 Server Modules: (Model AX52A2) | Hitachi BladeSymphony 1000 Server Modules: (Model AX52A2) | Hitachi BladeSymphony 1000 Server Modules: (Model AX52A2) | Hitachi BladeSymphony 1000 Server Modules: (Model AX52A2) |
| | Hitachi BladeSymphony 1000 Server Modules (Itanium 2-based models) | | |
| Hitachi Simple Modular Storage (SMS) Arrays | Hitachi Simple Modular Storage (SMS) Arrays | | Hitachi Simple Modular Storage (SMS) Arrays |
| | Hitachi Freedom Storage Lightning 9900 Series Arrays | | |
| NAS Device for AMS/WMS Storage Arrays | NAS Device for AMS/WMS Storage Arrays | NAS Device for AMS/WMS Storage Arrays | NAS Device for AMS/WMS Storage Arrays |
| NAS Device for Lightning 9900V Storage Arrays | NAS Device for Lightning 9900V Storage Arrays | NAS Device for Lightning 9900V Storage Arrays | NAS Device for Lightning 9900V Storage Arrays |
| NAS Device for USP and NSC55 Storage Arrays | NAS Device for USP and NSC55 Storage Arrays | NAS Device for USP and NSC55 Storage Arrays | NAS Device for USP and NSC55 Storage Arrays |
| | Hitachi Data Systems NetApp NAS Gateway for Hitachi Freedom Storage (Models GF825 and GF825c) | | |

| '645 Patent | '641 Patent | '733 Patent | '379 Patent |
|---|---|---|---|
|  | Hitachi Data Systems NetApp NAS Gateway for Hitachi Freedom Storage (Models GF940, GF940c, GF960, GF960c) |  |  |
|  | Hitachi Content Archive Platform |  | Hitachi Content Archive Platform |

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

The moving party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is "material" only if it will affect the outcome of a lawsuit, and a dispute over a material fact is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248.

If the moving party has demonstrated an absence of material fact, the nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Although the court views the underlying facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, conclusory allegations unsupported by factual data are insufficient to defeat a summary judgment motion.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  The court's ultimate inquiry is whether the specific facts set forth by the nonmoving party, coupled with undisputed background or contextual facts, are sufficient such that a rational or reasonable jury might return a verdict in its favor based on that evidence.  *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987).

## IV.   ARGUMENT

The Hitachi Defendants are entitled to summary judgment on three separate grounds.  **First**, the Supreme Court has already issued a final judgment that the Intel components substantially embody the LGE patents and that LGE's patent rights in the Intel components are exhausted by virtue of the authorized sales of those components.  Accordingly, LGE is collaterally estopped from alleging infringement against the Hitachi Accused Instrumentalities based upon the functionality of

1    Intel components.  *Second*, even if the issue had not already been decided, Intel was authorized by

2    LGE to sell components substantially embodying the LGE patents-in-suit "worldwide," and LGE has

3    been compensated for the alleged inventions disclosed in those patents.  Intel's authorized sales

4    exhausted LGE's rights in those components, regardless of whether the sales took place in the U.S.

5    or abroad.  LGE's argument that only sales of patented components in the U.S. can give rise to patent

6    exhaustion is simply another attempted end-run around the doctrine of patent exhaustion.  *Third*,

7    even if this Court were to accept the proposition that only a U.S. sale can exhaust a patentee's patent

8    right, LGE's patent rights are still exhausted because the license from LGE to Intel was a "sale" for

9    purposes of patent exhaustion and, as evidenced by the agreement itself, can be deemed to be a "U.S.

10   sale" by which LGE has obtained its compensation for the alleged inventions claimed in the LGE

11   patents-in-suit.

12        **A.    Collateral Estoppel Bars LGE from Relitigating Infringement by Intel
13               Components.**

14        LGE is collaterally estopped from relitigating the issue of exhaustion of Intel components, as

15   it has been finally adjudicated by the Supreme Court.  Collateral estoppel precludes a party from

16   relitigating an issue decided in a prior proceeding when (1) the determination of the issue in the prior

17   litigation was a critical and necessary part of the final judgment in the earlier action; (2) the issue

18   was actually litigated in the prior litigation by the party against whom preclusion is asserted; and (3)

19   the issue at stake is identical to the one alleged in the prior litigation.  *Trevino v. Gates*, 99 F.3d 911,

20   923 (9th Cir. 1996).  Each of these requirements is met here.  *First*, the Supreme Court's *Quanta*

21   decision on the exhaustion issue—the only issue on appeal—was a final judgment against LGE that

22   LGE's patent rights in Intel chipsets and microprocessors are exhausted.  *Second*, LGE—the plaintiff

23   in the present action—was the plaintiff in the Quanta Litigation.  *Third*, the Intel components at

24   issue in the present litigation were sold under the same license between LGE and Intel that was at

25   issue in the Quanta litigation.  Accordingly, the Hitachi Defendants are entitled to summary

26   judgment that based upon LGE's Infringement Contentions, LGE's patent rights are exhausted with

27   respect to the Hitachi Accused Instrumentalities at issue here.

28

1     **1.     The Supreme Court Issued a Final Judgment that LGE's Patent Rights in All Intel Components Sold Pursuant to the License Agreement Were Exhausted.**

In *Quanta*, the Supreme Court ruled that LGE had exhausted its patent rights in the Intel components, stating that "Intel's authorized sale to Quanta of products substantially embodying the LGE patents thus took those products outside the scope of the patent monopoly, and as a result, LGE can no longer assert its patent rights against Quanta."  *Quanta*, 128 S. Ct. at 2122.  The Supreme Court determined that "Intel's microprocessors and chipsets substantially embodied the LGE Patents because they had no reasonable noninfringing use and included all of the inventive aspects of the patented methods."  *Id.*  This ruling was a final, non-appealable judgment regarding the exhaustion of LGE's patent rights with respect to Intel components.[6]  *See Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007).

The Supreme Court reversed the Federal Circuit's decision on exhaustion and did not remand the case for further consideration of the issue.  *Quanta*, 128 S. Ct. at 2122; *see also* Hertko Decl., Ex. D, at 6.  While this Court allowed briefing to determine whether any additional issues remained to be decided, it indicated via a tentative ruling—which coincided with the parties' settlement—that LGE had waived its foreign sales argument with respect to patent exhaustion and that no issues remained unresolved.  *See* Hertko Decl., Ex. D.  Accordingly, this Court had no further required action except to execute judgment on that aspect of the case.  *See Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382 (Fed. Cir. 1999).  LGE cannot evade the ramifications of the Supreme Court's final judgment simply by settling with Quanta prior to execution of a judgment against it by this Court. *See Syverson*, 472 F.3d at 1079.

**2.     LGE Now Seeks to Impermissibly Relitigate the Identical Issue of Whether Its Patent Rights in the Intel Components Are Exhausted.**

This case and the Quanta Litigation present the identical issue for purposes of collateral estoppel—whether LGE's patent rights in Intel components are exhausted.  In applying defensive

---

[6] The Supreme Court's determination on the issue of patent exhaustion in *Quanta* was not just a critical and necessary part of the final judgment—it was the only issue on appeal.

collateral estoppel, the Ninth Circuit employs a four-factor test to determine whether two cases present issues that are substantively identical:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
> (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
> (4) how closely related are the claims involved in the two proceedings?

*Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) (*amended on other grounds by Kamilche Co. v. United States*, 75 F.3d 1391 (9th Cir. 1996)).  Here, the test is satisfied.  **First**, both proceedings involve the same legal issue and the same substantive facts, namely the purchase by Quanta and the Hitachi Defendants of the same types of Intel components.[7]  **Second**, Intel was authorized by LGE under the exact same agreement—the License Agreement—to make and sell the components at issue.  Like the defendants in the Quanta Litigation, the Hitachi Defendants use the Intel components as instructed by Intel.  To the extent there are minor differences between the specific Intel components purchased by Quanta and those purchased by the Hitachi Defendants, such differences would not affect the application of the exhaustion rule proffered by the Supreme Court.  Indeed, LGE's Infringement Contentions allege that any Intel components purchased by the Hitachi Defendants and identified by LGE substantially embody the LGE patents-in-suit.  *See* Patent L.R. 3-1(c).[8]  **Third**, arguments related to the Quanta Litigation could have reasonably been expected to embrace all authorized sales of patented Intel components, including those to the Hitachi Defendants, as the decisions of both this Court and the Federal Circuit in that case related to multiple

---

[7] The Hitachi Defendants have yet to receive a copy of LGE's infringement contentions from the Quanta Litigation despite serving a document request seeking the contentions over eight months ago.  *See* Hertko Decl., ¶¶ 14-15.  But based upon documents available to the Hitachi Defendants and statements made by the parties to the Quanta Litigation in Court-filed documents, there appears to be significant overlap in the types of components at issue in the two cases.  *See* Hertko Decl., Ex. A.

[8] Moreover, this proceeding involves no new evidence on this issue except for stipulations regarding the Hitachi Defendants' procurement of Intel components.  This additional evidence, however, confirms only one undisputed fact: that the Hitachi Defendants indeed purchased Intel components that are incorporated into the Hitachi Accused Instrumentalities.

purchasers that incorporated Intel components into their products.  **Fourth**, the claims in both cases are patent infringement claims under 35 U.S.C. § 271.

Collateral estoppel is appropriate on this issue despite the fact that LGE did not expressly raise its foreign sales argument in the Quanta Litigation.  The Supreme Court has already ruled that LGE's patent rights in Intel components sold under the License Agreement have been exhausted, and LGE's new argument does not involve the application of any different rule of law.  *See Kamilche Co.*, 53 F.3d at 1062 (finding the rule of law the same, even when the estopped party offered a new "'connecting argument'" (quoting *Starker v. United States*, 602 F.2d 1341, 1345 (9th Cir. 1979)).  Having had a full and fair opportunity to litigate the exhaustion issue and raise its foreign sales argument in the Quanta Litigation, LGE cannot use this argument to have another bite at the apple because "once an issue is raised and determined, ***it is the entire issue that is precluded, not just the particular arguments raised in support of it*** in the first case."  *Kamilche Co.*, 53 F.3d at 1063 (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) and citing both Restatement (Second) of Judgments § 27 and 1B Moore's Federal Practice ¶ 0.443[2]) (emphasis added); *see also* Hertko Decl., Ex. D, at 9 (this Court noting that LGE could, and should, have raised the foreign sales argument in the Quanta Litigation).

The issue of whether LGE's patent rights are exhausted in the Intel components purchased by the Hitachi Defendants is identical to the issue that LGE already fully and fairly litigated against Quanta.  The Supreme Court has already affirmatively answered that question, and accordingly LGE is collaterally estopped from alleging infringement against the Hitachi Defendants with respect to products that incorporate Intel components.

### B.    Under *Quanta*, LGE's Patent Rights are Exhausted by Intel's Authorized Sales of Components that Substantially Embody the Asserted Patents.

The Hitachi Defendants are entitled to summary judgment that LGE's patent rights in the Intel components at issue in this case are exhausted.  LGE's authorization of Intel to make and sell the patented components anywhere in the world satisfies the two-part test of *Quanta*, and the Supreme Court has already rejected the end-run type of arguments that LGE is again making by asserting that only U.S. sales can exhaust patent rights.  In *Quanta*, the Supreme Court stated:

1
2
3
4

> This case illustrates the danger of allowing such an end-run around patent exhaustion. On LGE's theory, although Intel is authorized to sell a completed computer system that practices the LGE Patents, any downstream purchasers of the system could nonetheless be liable for patent infringement. Such a result would violate the longstanding principle that, when a patented item is 'once lawfully made and sold, there is no restriction on [its] use to be implied for the benefit of the patentee.'

5

*Quanta*, 128 S. Ct. at 2118 (quoting *Adams v. Burke*, 84 U.S. (17 Wall.) 453 (1873)). Indeed, the

6

Supreme Court held that the doctrine of patent exhaustion applies equally to method and apparatus

7

claims, noting that limiting its application to the latter would simply provide a mechanism by which

8

patentees "could shield practically any patented item from exhaustion." *Quanta*, 128 S. Ct. at 2118.

9

The Supreme Court likewise held that a product that substantially embodies a patent is within the

10

scope of the doctrine of exhaustion, rejecting the argument that all physical aspects required to

11

practice the patent must be present in a product for the authorized sale of that product to exhaust

12

patent rights. *Id*. at 2118-21. LGE's foreign-sales argument is simply another attempt to circumvent

13

the doctrine of patent exhaustion. Having failed earlier in its bid to create an end-run around

14

exhaustion, LGE hopes that its foreign sales argument can return to it what *Quanta* took away. But

15

the location of the sale is irrelevant to the exhaustion analysis, and LGE's argument fails.

16
17

>   1.   **Exhaustion Turns on Whether the Patent Owner has Authorized the Sale of a Product that Substantially Embodies the U.S. Patent—Not Where the Sale Took Place.**

18

"The ***authorized*** sale of an article that substantially embodies a patent exhausts the patent

19

holder's rights and prevents the patent holder from invoking patent law to control postsale use of the

20

article." *Quanta*, 128 S. Ct. at 2122 (emphasis added). In *Quanta*, the Supreme Court explicitly

21

held that Intel was authorized under the License Agreement to sell components to Quanta that

22

substantially embodied LGE's patents. *Id*. Accordingly, Intel was likewise authorized—under the

23

exact same License Agreement—to sell components to the Hitachi Defendants that substantially

24

embody the LGE patents-in-suit, and LGE's patent rights in those components have been exhausted.

25

The location of the authorized sale is immaterial to the patent exhaustion analysis.

26
27

>   a.   **The Focus on the Authorization of the Sale in *Quanta* is Consistent with Precedent.**

28

The Supreme Court's focus in *Quanta* on the fact that Intel's sales were authorized by LGE is

consistent with precedent.  In *Adams v. Burke*, the Supreme Court examined whether the sale at issue was authorized in applying the doctrine of patent exhaustion.  *Adams*, 84 U.S. (17 Wall.) at 453.  In that case, the patent holder had licensed a carpenter to make and sell coffin lids, but only within ten miles of Boston.  *Id.* at 456-57.  The carpenter-licensee made an authorized sale—i.e., a sale within ten miles of Boston—of a coffin lid to an undertaker, who then carried the lid beyond the ten-mile radius and put it to use.  *Id.*  The Court denied the patent owner's attempt to collect a second royalty from the undertaker for using the coffin lid outside of the carpenter's sales region, noting "[t]hat so far as the use of it was concerned, the patentee had received his consideration, and it was no longer within the monopoly of the patent."  *Id.* at 456.  The authorized sale by the patent owner's licensee freed the coffin lid from the entirety of the patent owner's monopoly, including his rights to control use of his invention outside of the licensee's sales region.  These principles were affirmed in a later case involving pipe purchased in Michigan but used in Connecticut, outside the licensee's sales region.  *Hobbie v. Jennison*, 149 U.S. 355, 363 (1893).  In another case involving subdivided sales regions, the Supreme Court proclaimed that "we think it follows that one who buys patented articles of manufacture from one ***authorized to sell them*** becomes possessed of an absolute property right in such articles, ***unrestricted in time or place***."  *Keeler v. Standard Folding-Bed Co.*, 157 U.S. 659, 666 (1895) (emphasis added).  In all three earlier cases—as in *Quanta*—the exhaustion of the patentee's rights depended upon, and was triggered by, the patent owner's authorization of the sale and the fact that the patentee had already been compensated for the invention.

Moreover, Courts of Appeals and District Courts alike have generally avoided placing territorial limits on sales under the doctrine of patent exhaustion.  In *Curtiss Aeroplane & Motor Corp. v. United Aircraft Engineering Corp.*, the owner of United States and Canadian patents had entered into agreements with the British government for the manufacture of airplanes in Canada.  266 F. 71, 72 (2d Cir. 1920).  These agreements included the grant of an unrestricted license to practice the Canadian patents.  *Id.* at 73.  The accused infringer had purchased planes from the British government in Canada and proceeded to sell the planes in the United States.  *Id.* at 74.  Because the patent owner's license to the British government placed no contractual restrictions on the ultimate disposition of the planes, the court held that their sale by the British government in

Canada was authorized by the patent owner and thereby exhausted its U.S. patent rights in the planes. *Id.* at 80. The court explained:

> If the thing sold contains inventions of several United States patents owned by the vendor, the article is freed from each and all of them; and if the vendor has divided his monopoly into different territorial monopolies, his sale frees the article from them all. If the vendor's patent monopoly consists of foreign and domestic patents, the sale frees the article from the monopoly of both his foreign and his domestic patents, and where there is no restriction in the contract of sale the purchaser acquired the complete title and full right to use and sell the article in any and every country.

*Id.* at 78. The court further held that to permit the patentee to retain implied territorial restrictions in the post-sale use of the article would be inconsistent with the parties' presumed understanding. *Id.* at 78-79. Various district courts have arrived at the same conclusion. *See, e.g., Kabushiki Kaisha Hattori Seiko v. Refac Tech. Dev. Corp.*, 690 F. Supp. 1339, 1342 (S.D.N.Y. 1988) (holding that exhaustion applied to the authorized sale of watch components abroad, where the watch components were later incorporated into watches that were imported into the United States); *Sanofi S.A. v. Med-Tech Veterinarian Prods., Inc.*, 565 F. Supp. 931, 937-38 (D.N.J. 1983) (holding that exhaustion applied to the sale of a drug composition by an American patent owner in France, where the purchased drug composition was later imported into the United States). Like Intel in the present case, the parties in these cases were authorized to sell patented products, and thus the sales of such products exhausted the patentee's rights in those products, notwithstanding the fact that the sales may have been made outside of the United States.

          **b.**    **An Authorized Foreign Sale Exhausts Patent Rights in Light of the Supreme Court's Instruction that a Product Can Practice a U.S. Patent Outside of the United States.**

The Supreme Court in *Quanta* foreclosed any argument that an otherwise authorized foreign sale does not exhaust patent rights simply because it did not take place in the United States. Specifically, the Court noted that "'the authorized sale of an article which is capable of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold.'" *Quanta*, 128 S. Ct. at 2119 (quoting *Univis Lens*, 316 U.S. at 249). The Court rejected LGE's argument that an Intel component sold abroad would not practice LGE's U.S. patents because such a sale would be noninfringing. *Quanta*, at 2119 n.6. Specifically, the Court relied on *Univis* and

stated:

> *Univis* teaches that the question is whether the product is 'capable of use only in **practicing** the patent,' not whether those uses are infringing. Whether outside the country or functioning as replacement parts, the Intel Products would still be **practicing** the patent, even if not infringing it.

*Id.* (emphasis in original) (internal citation omitted). In other words, the application of the doctrine of patent exhaustion is unaffected by the location in which a product practices the patent. If the product practices the patent anywhere and the sale was authorized, then the patentee's rights in that product are exhausted. Accordingly, under *Quanta*, the location of the sale of a patented product does not affect the application of patent exhaustion. Just as a foreign sale of a patented product does not constitute a non-infringing use of that product, it likewise does not constitute a non-exhausting sale. The exhaustion analysis simply requires that (i) the product substantially embodies the patents and (ii) the sale was authorized. If both elements are satisfied—as they are in the present case—then the patentee's rights in the patented products are exhausted.

### 2. The Federal Circuit's *Jazz Photo* Decision Does Not Establish that only U.S. Sales Can Exhaust Patent Rights.

The Hitachi Defendants expect that LGE will argue that the Federal Circuit has already held in *Jazz Photo Corp. v. International Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001), that patent exhaustion does not apply where the patented components/products were first sold outside the United States. *See* Hertko Decl., Exs. B & C. But LGE's reliance on *Jazz Photo* is misplaced and does not stand for the proposition that LGE will likely advocate.

In *Jazz Photo*, the Federal Circuit reviewed an ITC decision that had focused exclusively on whether the accused infringers' refurbishing activities with respect to disposable cameras constituted permissible repair or impermissible reconstruction. *Id.* at 1098. The Federal Circuit examined the activities of the accused infringers—specifically the various steps that the accused infringers performed on the used cameras—and determined that certain steps constituted permissible repair and

1    not prohibited reconstruction, vacating the ITC's ruling.  *Id.* at 1101, 1105-11.[9]

2          The Federal Circuit in *Jazz Photo* commented that the repair doctrine was not applicable for

3    refurbished cameras whose outer shells had not been originally sold in the United States.  *Id.* at

4    1105.  In support of this statement, the Federal Circuit cited only one case—*Boesch v. Graff*, 133

5    U.S. 697, 698 (1890).  But *Boesch* does not stand for the proposition that LGE argues here—i.e., that

6    foreign sales cannot be the basis for exhaustion—but rather it turned on whether the patent owner

7    ***authorized*** the foreign sale, ***not*** on the mere fact that the sale occurred abroad.[10]  In *Boesch*, a patent

8    owner held patents in the United States and Germany for certain lamp components.  A third-party

9    individual in Germany held a prior use right under German law.  *Id.* at 701.  The accused infringer

10   purchased lamp components from the third-party individual in Germany and incorporated them into

11   lamps that he later sold in the United States.  *Id.* at 702.  The Court held that the sale by the

12   unauthorized third-party individual with prior-use rights in Germany did not exhaust the United

13   States patent because the sale was "without the license or consent of the owners of the United States

14   patent."  *Id.* at 702-03.  In other words, a patentee cannot suffer a loss of its U.S. patent rights by

15   virtue of a sale abroad not authorized under the U.S. patent.  But, if the patentee authorizes the

16   foreign sale under the U.S. patent—as is the case here—then the sale exhausts its patent rights in the

17   United States.

18          The present case is distinguishable from *Boesch*.  In *Boesch*, although the third-party

19   individual in Germany had a right to sell the lamp components there—a right which was not granted

20   by the patentee but rather inured by operation of German law—he had no rights under the U.S.

21   counterpart to the German patent, and thus the sale of patented components in Germany did not

22   exhaust the patentee's rights under the U.S. patent because the sale was not authorized under the U.S.

23   patent.   The facts in this case, however, are very different.   LGE authorized Intel to make

24   ─────────────

25   [9] The repair/reconstruction issue of *Jazz Photo* is not at issue here.  The Supreme Court in *Quanta* rejected LGE's reliance on *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961), in part because that case dealt with an issue—replacement of a part of a patented combination—that was not at issue in the Quanta Litigation.  *Quanta*, 128 S. Ct. at 2121.

26

27   [10] Notably, the parties in *Jazz Photo* did not brief the foreign-sales issue, and the issue was not before the Federal Circuit.

28

sales—both in the U.S. and abroad—of Intel components substantially embodying the LGE patents by virtue of the grant of a worldwide license.[11]   Accordingly, any sale of a patented component by Intel was authorized by LGE and necessarily removed the component from the scope of the patent monopoly enjoyed by LGE, regardless of where the sale took place.  Indeed, in *Quanta*, the Supreme Court noted that "[b]ecause Intel was ***authorized*** to sell its products to Quanta, the doctrine of patent exhaustion prevents LGE from further asserting its patent rights with respect to the patents substantially embodied by those products."  *Quanta*, 128 S.Ct. at 2122 (emphasis added); *see also STMicroelecs., Inc. v. Sandisk Corp.*, No. 4:05-cv-45, 2007 WL 951655, at *3 (E.D. Tex. Mar. 26, 2007) (magistrate recommendation) ("The *Jazz Photo* case does not stand for the proposition that only sales within the United States can trigger the doctrine when there is a valid license covering the products.").  The Supreme Court did not limit its holding to only sales first made in the United States.

### 3.   LGE's Foreign-Sales Argument is Logically Flawed, Contrary to Law, and is an Attempt to End-Run Around Patent Exhaustion.

A categorical rule, as LGE suggests here, that treats only U.S. sales, and not foreign sales, as sales that exhaust patent rights—regardless of the rights a seller had obtained from the patentee—is logically flawed and would eviscerate the doctrine of patent exhaustion, contradicts the law of indirect infringement, and is not practical in today's business world.

The Supreme Court in *Quanta* expressly rejected the notion that a party may recover twice for the same patented product.  *Quanta*, 128 S. Ct. at 2118 (rejecting LGE's theory under which "although Intel is authorized to sell a completed computer system that practices the LGE Patents, any downstream purchasers of the system could nonetheless be liable for patent infringement.").



1    Under LGE's foreign-sales argument, a patentee could recover twice for the same product (in

2    violation of the very fundamentals upon which the patent system rests) by simply selling, or

3    licensing to sell, patented products abroad, receiving compensation for those products, and then

4    seeking a second recovery when those products entered the United States.  A third party that

5    purchased patented products abroad from the patentee's licensee—a licensee that was authorized to

6    sell patented products worldwide under the patentee's patents with no restrictions—could be subject

7    to liability and could not avail itself of the protection of the patent exhaustion doctrine, despite the

8    fact that the patentee had already received its compensation for the patented product.  Such a rule

9    would violate *Quanta* and "the longstanding principle" that a patentee's rights in a product have been

10   exhausted upon an authorized sale of that product.  *Id.*

11          Moreover, this is not an improper application of U.S. patent law outside the United States, as

12   LGE might suggest.  The Federal Circuit has previously indicated that foreign activity can result in

13   liability for inducement of infringement.  *See Crystal Semiconductor Corp. v. TriTech*

14   *Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (finding that while practicing a

15   claim outside the United States cannot directly infringe, such actions can constitute active

16   inducement under 35 U.S.C. § 271(b)); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305

17   (Fed. Cir. 2006) (approving a jury instruction stating that induced infringement does not require any

18   activity by the indirect infringer in the United States).  Indeed, courts have held that purely

19   extraterritorial acts can give rise to liability for induced infringement "so long as [the accused

20   inducer] knew that some of the infringing products were destined for the United States." *Wing Shing*

21   *Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 407-11 (S.D.N.Y. 2007)

22   (granting summary judgment of induced infringement on the basis of foreign activity).  As noted in

23   *Quanta*, the scope of the patent exhaustion doctrine must necessarily be at least as broad as the scope

24   of potential liability for patent infringement.  *See Quanta*, 128 S. Ct. at 2119 n.6.  Accordingly, an

25   authorized foreign sale must exhaust the patent owner's rights if that sale would give rise to induced

26   infringement on the part of the seller absent authorization from the patentee.

27          In the present case, LGE recognized that absent the License Agreement, Intel's sale of

28   patented components could have subjected Intel to exposure for induced infringement.

1

2

3

4

5        As one court has seemed to suggest, it would be improper to

6   charge a party with induced infringement for conduct outside the U.S. while withholding from them

7   the affirmative defense of patent exhaustion based upon conduct outside the U.S.  *Refac Tech*., 690

8   F. Supp. at 1344.

9        Additionally, a categorical rule that the location of an authorized sale determines whether

10  that sale exhausts patent rights is not workable and promotes chicanery of the type that the Supreme

11  Court denounced in *Quanta*.  In today's global economy, determining the actual location of the "first

12  sale" of a patented component is often difficult, if not impossible, especially where corporations

13  have facilities across the world for design, manufacturing, and distribution, and where the

14  component often passes through multiple distributors and vendors in the chain before ending up in

15  the final product.  Purchasers of components that pass through such supply chains typically have no

16  way of knowing or determining the location of the first sale of the components from the

17  manufacturer, or the location of purchase by the distributors from whom they procure the

18  components, or even the location of purchase by the distributors from whom their distributors

19  procure the components.  Thus, to set up the foreign sale distinction as LGE suggests is simply not

20  practical and would encourage gamesmanship in the distribution of products in an effort to avoid

21  patent exhaustion—exactly the result that the Supreme Court wanted to avoid in *Quanta*.[12]

22        LGE has already received compensation for the Intel components ███████████

23  ████████████████, and it is now seeking a second recovery from the Hitachi Defendants by

24  creating a false distinction with respect to the "location" of the sale.  Intel's sales of patented

25

26  [12] This Court—in rejecting LGE's foreign-sale-is-a-non-infringing-use argument in the Quanta Litigation—likewise
27  noted that considering parties' domiciles or the locations of their production facilities "would be unworkable in
    practice as many corporations, both foreign and domestic, maintain multiple manufacturing facilities both within
28  and outside the United States."  *LG Elecs.*, 2002 WL 31996860, at *12 n.8.

1  components were authorized by LGE under the LGE patents-in-suit, regardless of whether Intel first

2  sold them in the United States or abroad.  Once LGE authorized Intel to sell the components under

3  the U.S. patents and received compensation from Intel for such authorization, LGE's rights in any

4  components sold by Intel (or downstream sellers) pursuant to that license were exhausted.  The

5  proper test for exhaustion is clear from *Quanta*—whether the sales of the patented products were

6  *authorized* under the U.S. patents—and is satisfied in the present case.

7        **C.**      **Even if this Court Determines that Only Sales Occurring in the U.S. Can**
8              **Exhaust Patent Rights, LGE's Patent Rights are Exhausted by Virtue of the**
            **Master and License Agreements.**

9        Even if this Court were to determine that only sales in the United States can give rise to

10 patent exhaustion, the Hitachi Defendants are still entitled to summary judgment on the grounds of

11 patent exhaustion because the license granted by LGE to Intel constitutes a "first sale" that occurred

12 in the United States.  As this Court previously stated, when a patent owner grants another party a

13 license to make and sell a product that substantially embodies a patent, that transaction constitutes a

14 "sale" for purposes of exhaustion.  *LG Elecs.,* 2002 WL 31996860, at *4 ("The unrestricted license

15 granted by LGE to Intel is equivalent to a 'sale' for purposes of the patent exhaustion doctrine."); *see*

16 *LG Elecs. v. Bizcom Elecs., Inc*, 453 F.3d 1364, 1370 (Fed. Cir. 2006) (noting that the license that

17 "LGE granted Intel . . . constitutes a sale for exhaustion purposes"), *rev'd on other grounds by*

18 *Quanta*, 128 S. Ct. 2109 (2008); *see also United States v. Masonite Corp.*, 316 U.S. 265, 278 (1942).

19 When a patentee licenses its United States patent to another to make and sell a product that

20 substantially embodies the patent, that patent owner has parted with its patent rights in products that

21 are made and sold under the licensing agreement.  *See TransCore, LP v. Elec. Transaction*

22 *Consultants Corp.*, No. 3:05-cv-2316-K, 2008 WL 2152027, at *4-*5 (N.D. Tex. 2008);

23 *STMicroelectronics,* 2007 WL 951655, at *3; *Cyrix Corp. v. Intel Corp.*, 803 F. Supp. 1200, 1214

24 (E.D. Tex. 1992).

25       By virtue of the consideration paid by Intel to LGE for the license grant from LGE, LGE has

26 been fully compensated for any invention claimed in the LGE patents-in-suit and, accordingly, its

27 rights in components made and sold by Intel under the license that substantially embody the patents

28

are exhausted.  The principle underlying the doctrine of patent exhaustion is that a patentee cannot recover twice for the sale of his invention—once the patentee has received compensation for his rights in the patented invention, he no longer holds a monopoly.  *See, e.g., Keeler*, 157 U.S. at 666 (noting that "the payment of a royalty once . . . emancipates such article from any further subjection to the patent throughout the entire life of the patent.").  In consideration for its grant of a license to Intel, LGE received a license under certain Intel patents.

LGE chose not to place conditions on Intel's right to make, use, or sell products pursuant to the license—.[13]  Accordingly, LGE granted Intel an unrestricted, worldwide license, and LGE received full compensation for the rights in its patents with respect to those Intel products made, sold, or used pursuant to that license.  By virtue of that "sale" from LGE to Intel, LGE has exhausted its patent rights in the Intel components that substantially embody the LGE patents covered by the License Agreement.

Moreover, the Master Agreement and the License Agreement both evidence that the "sale" between LGE and Intel occurred in the United States.

---

[13] Both this Court and the Supreme Court have held that the notice letter that Intel was required to send to its customers pursuant to the Master Agreement was not sufficient to place a condition upon the grant of the license from LGE to Intel.  *See Quanta*, 128 S. Ct. at 2121-22; *LG Elecs.*, 248 F.Supp.2d at 916-17.

1

2

3

4

5

6

7

All indications are

8 that LGE and Intel intended for both the Master Agreement and the License Agreement to be United

9 States agreements, with nothing to the contrary.  Thus, the "first sale"—the grant of the license from

10 LGE to Intel—is a "U.S. sale" as a matter of law and thus LGE's patent rights are exhausted even

11 under a narrow theory of the doctrine of patent exhaustion that places a territorial requirement on the

12 sale of the patented product.

13 **V.**      **CONCLUSION**

14      For the foregoing reasons, the Hitachi Defendants respectfully request that the Court grant

15 summary judgment that LGE's patent rights are exhausted with respect to the Hitachi Accused

16 Instrumentalities that incorporate—and for which LGE's Infringement Contentions are based

17 upon—Intel components that substantially embody the LGE patents-in-suit.

18

19

20

21

22

23

24

25

26

27

28

Dated:  January 9, 2009

Respectfully submitted,
/s/  Matthew J. Hertko
Perry R. Clark
State Bar No. 197101
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500
E mail:  pclark@kirkland.com

William A Streff, Jr., P.C.
William E. Devitt, P.C.
Mark L. Varboncouer
Matthew J. Hertko
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, IL  60601
Telephone:  (312) 861 2000
Facsimile:  (312) 861 2200

*Attorneys for Hitachi, Ltd., Hitachi America, Ltd., Hitachi Data Systems Corporation, and Hitachi Computer Products (America), Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that pursuant to Civil L.R. 5-5 and 5-6, **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED UPON PATENT EXHAUSTION** was filed electronically and, accordingly, was served on the following pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Scott R. Mosko
(scott.mosko@finnegan.com)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94303
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Vincent P. Kovalick
(vince.kovalick@finnegan.com)
Christopher T. Blackford
(christopher.blackford@finnegan.com)
Lei Mei (lei.mei@finnegan.com)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP

901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Andrew C. Sonu
(andy.sonu@finnegan.com)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2749
Facsimile: (202) 408-4400

Peter H. Kang (pkang@sidley.com)
Marc R. Ascolese (mascolese@sidley.com)
SIDLEY AUSTIN LLP

555 California Street
Suite 2000
San Francisco, CA 94104-1715
Telephone: 415-772-1200
Facsimile: 415-772-7400

Thomas N. Tarnay (ttarnay@sidley.com)
SIDLEY AUSTIN LLP
717 N. Harwood
Suite 3400
Dallas, TX 75201
Telephone: 214-981-3300
Facsimile: 214-981-3400

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 9, 2009 in Chicago, Illinois.

/s/ Matthew J. Hertko

Matthew J. Hertko