Perry R. Clark (SB No. 197101), pclark@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone:     (415) 439-1400
Facsimile:     (415) 439-1500

William A. Streff, Jr., P.C. (IL SB No. 2753979), wstreff@kirkland.com
William E. Devitt, P.C. (Admitted *Pro Hac Vice*), wdevitt@kirkland.com
Mark Varboncouer (Admitted *Pro Hac Vice*), mvarboncouer@kirkland.com
Matthew J. Hertko (Admitted *Pro Hac Vice*), mhertko@kirkland.com
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

*Attorneys for Hitachi, Ltd., Hitachi America, Ltd., Hitachi Data Systems Corporation, and Hitachi Computer Products (America), Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| **LG ELECTRONICS, INC.,** | **Case No. C 07-06511 CW** |
| Plaintiff/Counterclaim Defendant, | **The Honorable Claudia Wilken** |
| v. | **Hearing: February 26, 2009 at 2:00 pm** |
| **HITACHI, LTD., HITACHI AMERICA, LTD., HITACHI DATA SYSTEMS CORPORATION, and HITACHI COMPUTER PRODUCTS (AMERICA), INC.,** | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT BASED UPON PATENT EXHAUSTION** |
| Defendants/Counterclaim Plaintiffs. | **DEMAND FOR JURY TRIAL** |

*REDACTED*

**TABLE OF CONTENTS**

I. The Location of an Authorized Sale of a Component that Substantially Embodies a Patent is Irrelevant to the Issue of Patent Exhaustion. ............................2
    A. LGE's theory that *Quanta* governs exhaustion issues only in certain cases is indicative of its continued attempts to circumvent the Supreme Court's ruling. .....2
    B. In misapplying *Quanta*, LGE misconstrues *Boesch*, *Jazz Photo,* and *Fuji Photo Film*, none of which imports a U.S. sale requirement into *Quanta's* two-part exhaustion test. ................................................................................................3
    C. LGE's discussion of the extraterritorial effect of U.S. patent laws is wrong. ..........4
    D. LGE's "proof versus law" theory does not justify the imposition of a U.S. sale requirement on the doctrine of patent exhaustion, and such a requirement would be unworkable in practice. ..............................................................................4

II. The Intel License Agreement Constitutes a Sale in the U.S. for Purposes of Patent Exhaustion Because LGE has Received its Reward. ..........................................5

III. LGE is Collaterally Estopped from Asserting Its Claims Against the Hitachi Accused Products In Light of *Quanta*'s Holding that LGE's Patent Rights in Intel Components Have Been Exhausted...........................................................................6
    A. *Quanta* decided that the Intel components substantially embody the LGE patents-in-suit and that LGE's patent rights in those components have been exhausted.....................................................................................................................7
    B. LGE's suggestion that foreign sales in this case factually differentiate it from the Quanta Litigation is contrary to the facts and LGE's own prior statements. .....8

IV. LGE's Infringement Contentions Leave No Room for A Genuine Issue of Material Fact as to Whether the Intel Components Substantially Embody the LGE Patents-in-Suit...............................................................................................................8
    A. LGE's effort to manufacture an issue of fact based upon *its own* Infringement Contentions must fail. ................................................................................................9
    B. LGE's Infringement Contentions identify only Intel components as forming the bases for its infringement allegations against the Hitachi Accused Products........................................................................................................................11
    C. Just as in the Quanta Litigation, the "non-Intel" components to which LGE refers in its Opposition are nothing more than "standard parts" that fail to create a genuine issue of material fact regarding substantial embodiment............11
    D. LGE's concocted argument that the use of software in the accused products creates an issue of fact is also wrong................................................................12
    E. LGE's reliance on the Hitachi Defendants' interrogatory responses as evidence of disputed material facts is misplaced. ................................................................13

V. Conclusion ...................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Atmel Corp. v. Info. Storage Devices, Inc.*,
　　No. C 95-1987 FMS, 1998 WL 775115 (N.D. Cal. Nov. 5, 1998) .................................. 10, 14

*Boesch v. Graff,*
　　133 U.S. 697 (1890) ................................................................................................................ 3

*Curtiss Aeroplane & Motor Corp. v. United Aircraft Eng'g Corp.*,
　　266 F. 71 (2d Cir. 1920) .......................................................................................................... 3

*Elan Corp., PLC v. Andrx Pharm., Inc.*,
　　366 F.3d 1336 (Fed. Cir. 2004) .............................................................................................. 6

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
　　394 F.3d 1368 (Fed. Cir. 2005) .............................................................................................. 2

*Intertrust Techs. Corp. v. Microsoft Corp.*,
　　No. C 01-1640 SBA, 2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) ..................................... 9

*Jazz Photo Corp. v. Int'l Trade Comm'n,*
　　264 F.3d 1094 (Fed. Cir. 2001) .............................................................................................. 2

*Kamilche Co. v. United States*,
　　53 F.3d 1059 (9th Cir. 1995) .................................................................................................. 7

*Keeler v. Standard Folding-Bed Co.*,
　　157 U.S. 659 (1895) ................................................................................................................ 6

*LG Elecs. Inc. v. Q-Lity Computer Inc.*,
　　211 F.R.D. 360 (N.D. Cal. 2002) .......................................................................................... 10

*LG Elecs. v. Asustek Computer, Inc.*,
　　248 F.Supp.2d 912 (N.D. Cal. 2003) ..................................................................................... 7

*Microsoft Corp. v. AT&T Corp.*,
　　550 U.S. 437 (2007) ................................................................................................................ 4

*Miller v. Gammie*,
　　335 F.3d 889 (9th Cir. 2003) (*en banc*) ................................................................................. 3

*O2 Micro, Inc. v. Monolithic Power Sys., Inc.*,
　　467 F.3d 1355 (Fed. Cir. 2006) ............................................................................................ 10

*Omega S.A. v. Costco Wholesale Corp.*,
　　541 F.3d 932 (9th Cir. 2008) .................................................................................................. 4

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
　　128 S. Ct. 2109 (2008) .................................................................................................... passim

*Sec. Indus. Ass'n v. Board of Governors*,
　　900 F.2d 360 (D.C. Cir. 1990) ............................................................................................... 7

*United States v. Masonite Corp.*,
    316 U.S. 265 (1942) ................................................................................................................ 6

*United States v. Univis Lens Co.*,
    316 U.S. 241 (1942) ............................................................................................................ 3, 6

**STATUTES**

35 U.S.C. § 271(b) ............................................................................................................................ 4

35 U.S.C. § 271(f) ............................................................................................................................. 4

35 U.S.C. §102(b) ............................................................................................................................. 6

**Memorandum of Points and Authorities**

LGE continues to misread and misapply *Quanta* in an attempt to evade the clear ruling by a unanimous Supreme Court that its patent rights in Intel components embodying the patents-in-suit are exhausted. *Quanta* clearly reinforces the principle that a patentee cannot recover twice for the same patented product and, more specifically, that a patentee cannot recover from multiple parties in a distribution chain of a patented component, provided that the sale of the component was authorized by the patentee. In so doing, *Quanta* established a two-part test for patent exhaustion, requiring only (i) an authorized sale of a component (ii) that substantially embodies the patent at issue. If the two-part test is met—as it is here—the patentee's rights are exhausted ***in every instance***—not only in certain instances, as LGE suggests.[1] Importantly, a first sale in the U.S. is ***not*** a required third element of the exhaustion analysis. Indeed, as pointed out in the Hitachi Defendants' Motion, *Quanta* noted that the location of an authorized sale has ***no bearing*** on the exhaustion analysis. Whether the sale of the component took place in the U.S. or abroad is irrelevant.

Moreover, even under LGE's flawed reading of *Quanta* and the pre-*Quanta* Federal Circuit cases on which LGE relies, the Hitachi Defendants are still entitled to summary judgment, because the License Agreement between LGE and Intel is in fact a U.S. sale for exhaustion purposes and LGE has received its reward. Furthermore, LGE is collaterally estopped from asserting any infringement theory based upon Intel components in light of the Supreme Court's unequivocal decision on that issue. The foreign sales theory was not an unlitigated "issue" in the Quanta Litigation, as LGE suggests, but rather an argument that LGE is trying to use to avoid the holding of *Quanta*.

At this point, there are no material facts in dispute and summary judgment is appropriate. LGE's attempts to manufacture factual issues—essentially exploiting insufficiencies in ***its own*** Infringement Contentions—are unavailing and do not create a ***material*** dispute. First, LGE is bound

---

[1] As set forth in their opening Memorandum of Points and Authorities, the Hitachi Defendants maintain that their products do not infringe the LGE patents-in-suit and expressly reserve the right to contest all of LGE's Infringement Contentions. For purposes of the present Motion only, the Hitachi Defendants rely upon LGE's Infringement Contentions as presented by LGE.

by its Contentions under the Patent Local Rules, and it has identified *only* Intel components as forming the bases for its infringement allegations with respect to the Hitachi Accused Products subject to the present Motion. Second, the Supreme Court has already foreclosed LGE's arguments regarding substantial embodiment, and LGE is simply rehashing the same flawed arguments.

For all of these reasons, the Hitachi Defendants are entitled to judgment as a matter of law, and summary judgment should be granted in their favor.

## I. The Location of an Authorized Sale of a Component that Substantially Embodies a Patent is Irrelevant to the Issue of Patent Exhaustion.

LGE's assertion that foreign sales of Intel components do not exhaust its patent rights in those components is foreclosed by *Quanta Computer, Inc. v. LG Electronics, Inc.*, 128 S. Ct. 2109 (2008). The test for patent exhaustion as set forth in *Quanta* does not include any requirement that the first sale occur in the United States, and LGE fails to explain why or how pre-*Quanta* Federal Circuit cases impose such a requirement.

### A. LGE's theory that *Quanta* governs exhaustion issues only in certain cases is indicative of its continued attempts to circumvent the Supreme Court's ruling.

LGE's suggestion that *Quanta* controls only "if sales occur in the United States" and that *Jazz Photo* and *Fuji Photo Film* control "if sales are outside the United States," Opp. at 19, is wrong. *Jazz Photo Corp. v. Int'l Trade Comm'n,* 264 F.3d 1094 (Fed. Cir. 2001); *Fuji Photo Film Co. v. Jazz Photo Corp.,* 394 F.3d 1368 (Fed. Cir. 2005). The Supreme Court established a two-part test for patent exhaustion and did *not* (i) limit the application of that test to instances where the first sale took place within U.S. borders or (ii) establish a different test where the first sale took place outside U.S. borders. *Quanta*, 128 S. Ct. at 2122. If the patentee authorizes the sale of a component and that component substantially embodies a patent, then the patentee's rights in that component are exhausted. *Id.* The location of the sale is irrelevant—just as it was in *Quanta*—and the Supreme Court's opinion forecloses any suggestion to the contrary.

LGE's attempt to distinguish footnote 6 in *Quanta* as "addressing an entirely different concept," Opp. at 19, likewise fails. That footnote's reference to overseas sales was not limited, as LGE asserts, to only "whether the Intel Products substantially embodied the patent claims." *Id*.

1   Footnote 6 relates directly to the discussion of *United States v. Univis Lens Co.*, 316 U.S. 241
2   (1942), and the Court noted that in the context of exhaustion, the key inquiry is whether a product "is
3   capable of use only in ***practicing*** the patent, not whether those uses are infringing." *Quanta*, 128 S.
4   Ct. at 2119 n.6 (emphasis in original).  The effect is thus that the location of the sale is irrelevant to
5   the exhaustion calculus.  If the component substantially embodies the patent and the sale was
6   authorized, then the patentee's rights are exhausted—regardless of where the initial sale of the
7   component took place.

### B.   In misapplying *Quanta*, LGE misconstrues *Boesch*, *Jazz Photo,* and *Fuji Photo Film*, none of which imports a U.S. sale requirement into *Quanta's* two-part exhaustion test.

LGE continues to rely on pre-*Quanta* Federal Circuit caselaw to espouse its flawed theory that *Quanta* does not apply to cases involving foreign sales.  LGE's entire argument rests on *Jazz Photo*.  In its Opposition, LGE expressly indicated that it "generally agrees with Hitachi's characterization" of the lower court decisions holding that authorized sales outside of the U.S. may exhaust a patentee's patent rights, as well as with the Hitachi Defendants' characterization of *Boesch* and *Curtis Aeroplane*.  Opp. at 16-17 (discussing *Boesch v. Graff,* 133 U.S. 697 (1890), *Curtiss Aeroplane & Motor Corp. v. United Aircraft Eng'g Corp.*, 266 F. 71 (2d Cir. 1920), and several lower court decisions).  The ***only case*** upon which the Federal Circuit relied in *Jazz Photo* was *Boesch*, and LGE's agreement with the Hitachi Defendants' characterization of *Boesch* is telling.

LGE's argument is unintelligible.  LGE jumps from *Boesch* and *Curtis Aeroplane* to the Federal Circuit's ruling in *Jazz Photo*, without explanation or analysis of how it arrived there—much like *Jazz Photo* itself.  *Quanta*, not *Jazz Photo*, is the test for patent exhaustion.  Just as LGE continues to misapply and ignore the holding of *Quanta*, it continues to misconstrue and misapply *Boesch* and, therefore, *Jazz Photo* and *Fuji Photo Film*.[2]

---

[2] To the extent that LGE asserts that *Quanta* sets forth a different test than *Jazz Photo* and *Fuji Photo Film*—and that the cases are therefore irreconcilable—then *Quanta* governs the exhaustion analysis. *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (*en banc*). *Miller* held that a decision from a higher authority can undercut an appellate court decision such that—even though not expressly overruled and even if the issues decided by the higher court were not identical—the circuit precedent "is no longer binding on district judges." *Id*. at 899-900.

**C.     LGE's discussion of the extraterritorial effect of U.S. patent laws is wrong.**

LGE admits in its Opposition that "Section 271(b) of the Patent Law has been expressly applied to conduct outside the United States." Opp. at 20. But LGE fails to address the Hitachi Defendants' argument that the scope of patent exhaustion must be as broad as the scope of liability for patent infringement. LGE offers no explanation for why the Patent Act applies to foreign conduct (as LGE admits) but the defense of patent exhaustion requires a first sale in the U.S. LGE's reliance on *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007), for the broad proposition that U.S. patent laws have no extraterritorial effect is wrong, because—as LGE acknowledges—35 U.S.C. § 271(b) applies to foreign conduct. *Microsoft* is inapposite because it addressed 35 U.S.C. § 271(f)—which is not at issue in this case—and the specific issue of what constitutes a "component" of a patented invention under that section of the Patent Act—which is irrelevant here. *Id.*[3]

**D.     LGE's "proof versus law" theory does not justify the imposition of a U.S. sale requirement on the doctrine of patent exhaustion, and such a requirement would be unworkable in practice.**

There is a good reason why the Patent Act does not require a U.S. sale of a component for patent exhaustion to apply to sales down the distribution chain. Where there are several links in the distribution chain, and the purchase by the alleged infringer is several times removed from the "first sale," it would be difficult, if not impossible, to determine where and to whom the first sale was made. A purchaser of a component certainly has knowledge of where, or the nationality of the company from whom, *it* took delivery of a particular component. But that end purchaser has no way to determine where all of the parties involved in the distribution chain prior to its purchase took delivery of the component or purchased the component, or even the identity of all of those upstream

---

[3] LGE's analogy to *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 932 (9th Cir. 2008), and copyright law is also misplaced. Patent law and copyright law have separate statutory schemes and bodies of caselaw. *Omega* rests on the "lawfully made under this Title" clause of § 109(a) of the Copyright Act. *Omega*, 541 F.3d at 988-90. By implication, authorized foreign sales of copyrighted goods would be exhausting sales ***but for*** Congress's statutory narrowing of the exhaustion doctrine, which requires that a particular copy be "lawfully made under" the Act—i.e., made in the U.S.—in order for an alleged infringer to invoke the first sale defense. No similar statutory provision exists in the Patent Act.

parties.[4] Thus, while the Hitachi Defendants may know that they purchased the Intel chips from an authorized distributor in Japan, that distributor (or another supplier in the supply chain) may have purchased those same Intel chips initially from Intel in the United States. *See* Amano Decl., ¶¶ 3-5; Pamboris Decl., ¶¶ 3-5.

LGE's response to the Hitachi Defendants' argument regarding the impracticality of applying patent exhaustion only where the initial sale of the component occurred within the United States, Opp. at 20-21, misses the point. LGE's proposal would set up a largely unworkable system from a discovery and proof standpoint, where the purchaser would have no way of knowing if a component was authorized or licensed, and would only lead to gamesmanship in the vendor supply chain—exactly what the Supreme Court cautioned against in *Quanta*. *See Quanta*, 128 S. Ct. at 2118.

## II. The Intel License Agreement Constitutes a Sale in the U.S. for Purposes of Patent Exhaustion Because LGE has Received its Reward.

LGE does not even address, let alone contest, that to the extent the Intel License Agreement constitutes a sale, it constitutes a sale ***in the United States***.[5] Accordingly, all that is left for this Court to decide is whether the License Agreement is a "sale" for patent exhaustion purposes. LGE admits that both this Court's prior decision and the Federal Circuit's decision in the Quanta Litigation answered that question affirmatively and "indicated that the license granted by LGE to Intel was a 'sale' for exhaustion purposes." Opp. at 22. Because patent exhaustion is predicated upon a patentee's receiving compensation for his invention, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the License Agreement constitutes a U.S. sale that exhausts LGE's rights in Intel's components even under LGE's interpretation of *Quanta*, *Jazz Photo*, and *Fuji Photo Film*.

---

[4] LGE cites a number of cases for the limited proposition that "[d]etermining the location of a first sale may be difficult, but it is not impossible." Opp. at 20-21. None of these cases, however, changes the Hitachi Defendants' analysis that requiring a determination of the location of upstream sales presents an unworkable test. Moreover, as discussed above, the Supreme Court in *Quanta* did not require such a determination.

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*United States v. Masonite Corp.*, 316 U.S. 265 (1942), further supports the Hitachi Defendants' argument. LGE argues that "[t]here was no license agreement at issue in *Masonite*," Opp. at 22, but *Masonite* explicitly reviewed the agency agreements between competitors and the intended effects of those agreements—which included "a license to vend." *Masonite*, 316 U.S. at 277. *Masonite* reviewed the principles of patent exhaustion in assessing the viability of post-sale conditions on the sale of a patented product, specifically noting that "[i]n applying that rule [of patent exhaustion] this Court has quite consistently refused to allow the form into which the parties chose to cast the transaction to govern." *Id*. at 278.[6]

In fact, the portion of *Masonite* that LGE quotes in its Opposition sets forth the overarching principle behind the doctrine of patent exhaustion, reiterated over 66 years later in *Quanta*: whether the patentee has received compensation for his invention. *See* Opp. at 22. Indeed, the Supreme Court held in *Keeler v. Standard Folding-Bed Co.*, 157 U.S. 659, 666 (1895), that "the payment of a royalty once . . . emancipates [a patented] article from any further subjection to the patent throughout the entire life of the patent." *Univis* likewise noted that a patentee parts with his patent rights when he has received his reward. *See Univis,* 316 U.S. at 251. ██████████████████████████ ████████████████████████████████████████████████████████████████████ Accordingly, LGE's patent rights in Intel components are exhausted.

### III. LGE is Collaterally Estopped from Asserting Its Claims Against the Hitachi Accused Products In Light of *Quanta*'s Holding that LGE's Patent Rights in Intel Components Have Been Exhausted.

The Supreme Court's decision in *Quanta* was a final adjudication that Intel components substantially embody the claims of LGE patents and that LGE's patent rights in those components

---

[6] LGE's reliance on the discussions during the Supreme Court oral argument regarding this issue in the Quanta Litigation, Opp. at 23 n.18, is unavailing—the Supreme Court's decision neither cited *Masonite* nor addressed the issue of whether a license constitutes a sale for purposes of patent exhaustion. LGE's citation to *Elan Corp., PLC v. Andrx Pharmaceuticals, Inc.*, 366 F.3d 1336 (Fed. Cir. 2004), Opp. at 23, also does not support its position, because *Elan* addressed the "on-sale bar" of 35 U.S.C. § 102(b) for purposes of invalidity and had nothing to do with patent exhaustion.

1   are exhausted.[7] *Quanta*, 128 U.S. at 2122.  LGE is therefore collaterally estopped from asserting its
2   claims for patent infringement based upon Intel components against the Hitachi Defendants, and the
3   purported fact differences that LGE cites in its Opposition stand in stark contrast to the actual facts.

**A.    *Quanta* decided that the Intel components substantially embody the LGE patents-in-suit and that LGE's patent rights in those components have been exhausted.**

Recognizing that the Supreme Court has already ruled that its patent rights in Intel components substantially embodying LGE's patents are exhausted—the exact same issue presented in the instant Motion—LGE is now trying to reframe "the occurrence of foreign sales and the consequence to exhaustion" as a previously unlitigated issue.  Opp. at 15.  This supposedly new *theory*, however, raises no new legal *issues* and cannot overcome the final decision of the Supreme Court.

*Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995), held that once an issue is litigated and decided, that issue—and all arguments and theories pertaining to that issue—are precluded.  *Kamilche*, which dealt with whether a private party held title to a piece of land used as the basis for a tax deduction, held that the government was estopped from asserting a legal theory—state ownership by adverse possession—that it did not assert in the first litigation (in which ownership was determined via a prior survey of the land).  *Id*. at 1061-63.  The *issue* of ownership had been decided in the first litigation, and the government was estopped from asserting a new and different *theory* directed at that *same issue* in the second litigation.  *Id.; see also Sec. Indus. Ass'n v. Board of Governors*, 900 F.2d 360, 364 (D.C. Cir. 1990) ("[P]reclusion because of a prior adjudication results from the resolution of a question *in issue*, not from the litigation of specific *arguments* directed to the issue.") (emphasis in original).  LGE is trying to do the same thing here. *Quanta* has already decided the issue of whether LGE's patent rights in Intel components that

---

[7] This Court held that Intel components substantially embodied all of the LGE patents-in-suit at issue in this case—including the '645 patent that was not at issue in *Quanta*—and that LGE's patent rights were therefore exhausted. *LG Elecs. v. Asustek Computer, Inc.*, 248 F.Supp.2d 912 (N.D. Cal. 2003).  Moreover, LGE's Opposition does not dispute that the '645 patent falls within the scope of the License Agreement.

substantially embody the patents-in-suit are exhausted in the affirmative, and LGE is collaterally estopped from asserting a supposedly new theory that its rights are not exhausted in the present case because of "foreign sales."

### B. LGE's suggestion that foreign sales in this case factually differentiate it from the Quanta Litigation is contrary to the facts and LGE's own prior statements.

LGE's assertions that it was unnecessary for the Supreme Court to reach the foreign sales issue because "[t]he Court'[s] judgment is fully supported by sales of Intel products in the United States," and that foreign sales present a "fact difference" between this case and the Quanta Litigation, Opp. at 15-16, are belied by the facts and LGE's own statements in the Quanta litigation. By its argument, LGE suggests that the Intel chips found to be exhausted by the Supreme Court in *Quanta* were all initially sold in the United States.  But that contradicts LGE's prior admissions.  For example, in its opening Federal Circuit brief in the Quanta Litigation, LGE admitted:  "[a] significant portion of the chips Intel sells are manufactured and sold abroad. . . . Defendants purchase Intel products for use in manufacturing infringing computer systems *in Asia*."  Supp. Hertko Decl., Ex. R at 31 n.5.  Even if *Kamilche* allowed LGE to raise a supposedly new theory now to attack the holding in *Quanta* (and it does not), LGE's foreign sales theory is not a "fact difference" that provides a basis for another bite at the exhaustion apple.[8]

### IV. LGE's Infringement Contentions Leave No Room for A Genuine Issue of Material Fact as to Whether the Intel Components Substantially Embody the LGE Patents-in-Suit.

LGE's recitation of alleged "disputed facts" presents facts that are not disputed at all, and LGE's attempts to manufacture issues of material fact fail for several reasons:

- LGE is bound by its Infringement Contentions under this Court's Patent Local Rules, and those Contentions either (i) fail to establish alleged infringement by the Hitachi Defendants or (ii) establish that the Intel components substantially embody the claims of the LGE

---

[8] LGE's assertion that the report of Dr. Burger "confirms that there are in fact real differences" between the products at issue in the Quanta Litigation and those at issue here, Opp. at 3, is likewise to no avail.  Dr. Burger did not—and could not—support such a proposition, as he wrote his report without any information whatsoever regarding the products at issue in this case. Even if different end products are at issue, the functionality of the identified components in those products—per LGE's Infringement Contentions—necessarily remains the same.

patents-in-suit.  LGE cannot have it both ways.

- LGE's arguments regarding combinations of the Intel components with standard parts or software likewise fail to raise any genuine issues of material fact under *Quanta*.
- LGE takes the Hitachi Defendants' discovery responses completely out of context, and its reliance thereon fails to establish the existence of any disputed material facts.

Accordingly, no genuine issues of disputed fact exist with respect to the "substantial embodiment" prong of *Quanta*.  The Supreme Court has already rejected LGE's argument that combining components that substantially embody the claims—like the Intel components here—with "standard" parts negates patent exhaustion.  *Quanta*, 128 S. Ct. at 2120.  LGE's concocted argument based upon standard BIOS initialization likewise fails to change the result dictated by *Quanta*.  Based upon LGE's Infringement Contentions, the Intel components identified by LGE for the Hitachi Accused Products substantially embody the LGE patents-in-suit.  Summary judgment is therefore appropriate.

### A. LGE's effort to manufacture an issue of fact based upon *its own* Infringement Contentions must fail.

The Hitachi Defendants are entitled to rely upon LGE's Infringement Contentions for purposes of this summary judgment motion, and LGE is bound by those Contentions.  LGE cannot exploit the lack of specificity of ***its own Contentions*** to manufacture issues of fact.  "The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims."  *Intertrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003).  The Patent Local Rules are meant to ensure that a plaintiff performs its due diligence before bringing suit so as to shape and narrow discovery, requiring a plaintiff to "crystallize [its] theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-

1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998).[9]  Indeed, in affirming this Court's denial of a motion to amend infringement contentions, the Federal Circuit stated that "[t]he Northern District of California has adopted local rules that require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity."  *O2 Micro, Inc. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006).

LGE cannot have it both ways.  LGE's Infringement Contentions are either insufficient to establish that the Hitachi Accused Products infringe, or they demonstrate that the Intel components identified therein substantially embody the LGE patents-in-suit.  It cannot be both, as LGE tries to assert.  *Atmel* recognized that the Patent Local Rules are "designed to prevent the 'shifting sands' approach to claim construction" and that plaintiffs are bound by their claim charts from early on in the case.  *Atmel*, 1998 WL 775115, at *2.  LGE is likewise bound by its Contentions here, and those Contentions establish LGE's admission that the Intel components identified for the Hitachi Accused Products substantially embody the LGE patents-in-suit.

The briefing presented on appeal to the Federal Circuit in the Quanta Litigation further demonstrates that (i) the only evidence relating to substantial embodiment in the Quanta Litigation was LGE's infringement contentions, *see, e.g.*, Supp. Hertko Decl., Ex. M at 2, and (ii) LGE advanced the same argument that it makes here—namely, that despite what it said in its contentions in that case, the identified Intel components did not practice the patents for purposes of patent exhaustion, because they had to be used in connection with programmable latency timers, PCI buses, PCI devices, and/or memories.  *See* Supp. Hertko Decl., Ex. N at 10 n.7.  LGE's arguments in the current litigation mirror its flawed arguments from the Quanta Litigation that were ultimately rejected by the Supreme Court.

---

[9] Although *Atmel* addressed an earlier version of this Court's Patent Local Rules, Magistrate Judge LaPorte noted—in denying LGE's motion to amend its infringement contentions to accuse new products except where the defendants did not oppose the motion in the Quanta Litigation—that "the general philosophy behind the Patent Local Rules remains as stated in *Atmel*." *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002).

**B.     LGE's Infringement Contentions identify only Intel components as forming the bases for its infringement allegations against the Hitachi Accused Products.**

LGE's statements that "LGE's preliminary contentions are not based exclusively upon Intel components," *see, e.g.*, Opp. at 8, are wrong. As shown in the chart attached at Exhibit L to the Supplemental Hertko Declaration, LGE has identified Intel components—and *only* Intel components—as forming the bases for its assertion of each claim of each patent-in-suit against each Hitachi Accused Product. No other components form the bases for LGE's infringement allegations.

**C.     Just as in the Quanta Litigation, the "non-Intel" components to which LGE refers in its Opposition are nothing more than "standard parts" that fail to create a genuine issue of material fact regarding substantial embodiment.**

The Supreme Court has already rejected LGE's argument that the combination of Intel components with buses or memory removes the Intel components from the scope of patent exhaustion. *Quanta*, 128 S. Ct. at 2121. Indeed, *Quanta* explicitly stated that "the inventive part of the patent is not the fact that memory and buses are combined with a microprocessor or chipset; rather, it is included in the design of the Intel Products themselves and the way these products access the memory or bus." *Id*. "Naturally, the Intel Products cannot carry out [the functions claimed in the patents] unless they are attached to memory and buses, ***but those additions are standard components in the system***, providing the material that enables the microprocessors and chipsets to function." *Id*. at 2120 (emphasis added).

LGE's own "analyses" in its Opposition belie its allegations that the Hitachi Defendants have not shown how the accused Hitachi products "employ[] or interface[] only with 'common processes' and 'standard parts.'" Opp. at 6. LGE's arguments are simply variants of the "combination with standard components" argument already rejected by the Supreme Court in *Quanta*.

- *First*, for the '645 patent, there is no dispute that the patent is directed to a page mode access to DRAM over a system bus, but LGE completely ignores the fact that its own Infringement Contentions point *only* to Intel components as the claimed memory controller that interfaces to standard components, such as memory and a system bus. *See* Hertko Decl., Ex. J. Because the memory chips and PCI/PCI-X bus identified by LGE are standard components and not inventive—as the Supreme Court explicitly stated—the Intel components

substantially embody the claimed invention. *Quanta*, 128 S. Ct. at 2119.

- *Second*, for the '641 patent, LGE characterizes a Hitachi chipset as "integral to maintaining cache coherency," yet neither LGE's Opposition nor Mr. Hoffman's declaration describes its function beyond simply "providing communications" between standard components. Opp. at 10. The fact of the matter is that this Hitachi chipset provides basic functionality to the Hitachi Accused Product, which is insignificant to the alleged inventive aspects of the '641 patent.

- *Third*, for the '733 patent, LGE asserts that PCI/PCI-X devices "manufactured by companies other than Intel" perform the "counting" limitation of claim 15, Opp. at 12. But LGE's Infringement Contentions identify no specific types or examples of PCI/PCI-X devices—let alone any "companies other than Intel" that manufacture PCI/PCI-X devices—that perform this (or any other) limitation of the '733 patent claims, a clear indication that these are just standard parts. *See* Hertko Decl., Ex. H.

- *Finally*, for the '379 patent, LGE identifies no hardware other than the EMDA controller, which is included in the Intel 3100 Chipset. Moreover, LGE alleges that the Infringement Contentions for the '379 patent "point to PCI/PCI-X devices that are manufactured by several companies." Opp. at 4. Yet, LGE's Infringement Contentions regarding the '379 patent for the Hitachi Accused Products do not include a single reference to PCI or PCI-X devices, let alone identify any specific devices or companies that manufacture them. *See* Hertko Decl., Ex. I.

### D.  LGE's concocted argument that the use of software in the accused products creates an issue of fact is also wrong.

LGE's argument that an issue of fact exists because "the Intel components require software" fails because the initialization software used in the Hitachi Accused Products merely implements Intel's specifications. LGE relies on Mr. Hoffman's declaration, which explicitly states that the Intel components are designed to be initialized. *See* Hoffman Decl., ¶¶ 34-36. The Intel components as designed by Intel and purchased by the Hitachi Defendants substantially embody the claim limitations of the LGE patents-in-suit according to LGE's Infringement Contentions. That they are

1 later initialized by software has no bearing on the substantial embodiment analysis.

2     LGE's statement that "the Intel components at issue in this case require structure that is
3 modified by Hitachi" due to BIOS or otherwise, Opp. at 14, is wrong.  The structure of the Intel
4 components is *not* modified or altered in any way by the Hitachi Defendants.  *See* Inoue Decl., ¶¶ 3-
5 9; Shibata Decl., ¶¶ 3-9; Pamboris Decl., ¶¶ 3-7.  To the extent that the Intel components must be
6 initialized or configured by software to operate as LGE has alleged in its Infringement Contentions,
7 the software simply configures the Intel components to function *as designed by Intel*, and the
8 configuration is based upon instructions and specifications provided by Intel.  *See* Inoue Decl., ¶¶ 3-
9 9; Shibata Decl., ¶¶ 3-9; Pamboris Decl., ¶¶ 3-7. [REDACTED]

10 [REDACTED]
11 [REDACTED]
12 [REDACTED]

13 Accordingly, LGE's "software" argument fails.

14     **E.**    **LGE's reliance on the Hitachi Defendants' interrogatory responses as evidence of disputed material facts is misplaced.**

15     LGE's Opposition takes the Hitachi Defendants' interrogatory responses wholly out of
16 context in its quest to fabricate an issue of material fact.  The responses upon which LGE relies were
17 provided in a good-faith attempt to narrow LGE's extremely broad request, which if read literally
18 required information on every "motherboard or mainboard, microprocessor, microcontroller,
19 memory controller, chipset, PCI device, and ASIC" in every accused product.  *See* Mosko Decl., Ex.
20 B at 3.  Moreover, the responses explicitly state that the components identified by the Hitachi
21 Defendants "***may relate to what LGE has alleged is*** the subject matter of the patents-in-
22 suit"—hardly an admission that there is a genuine factual dispute on a material fact after *Quanta*.  As
23 the Supreme Court explicitly held in *Quanta*—and as LGE continues to ignore—a standard
24 component (i.e., a memory or a bus) can "relate" to the subject matter of a patent claim even though
25 another component (i.e., an Intel chipset) substantially embodies that claim.  *Quanta*, 128 S. Ct. at
26 2120.

27     Furthermore, LGE's suggestion that the Hitachi Defendants are "unwilling to disclose the
28

actual construction of their products in terms of components," Opp. at 5, is wholly unfounded. Not only have the Hitachi Defendants produced over 500,000 pages of documents and technical materials relating to their products, but they also fully and fairly responded to LGE's overly broad and burdensome interrogatories. *See* Supp. Hertko Decl., ¶ 9. LGE—not the Hitachi Defendants—bears the burden on infringement for each of the Hitachi products that LGE accuses. In that regard, LGE is bound by its Infringement Contentions, which rely upon Intel components—and ***only*** Intel components—as forming the bases for LGE's infringement allegations against the Hitachi Accused Products. *See Atmel*, 1998 WL 775115, at *3.

## V.     Conclusion

For the foregoing reasons, and the reasons set forth in the Memorandum of Points and Authorities accompanying their Motion, the Hitachi Defendants are entitled to summary judgment.

| | | |
|---|---|---|
| 1 | Dated: February 6, 2009 | Respectfully submitted, |
| 2 | | /s/  Matthew J. Hertko |
| | | Perry R. Clark |
| 3 | | State Bar No. 197101 |
| | | KIRKLAND & ELLIS LLP |
| 4 | | 555 California Street |
| | | San Francisco, California 94104 |
| 5 | | Telephone:  (415) 439-1400 |
| | | Facsimile:  (415) 439-1500 |
| 6 | | E mail:  pclark@kirkland.com |

William A Streff, Jr., P.C.
William E. Devitt, P.C.
Mark L. Varboncouer
Matthew J. Hertko
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, IL  60601
Telephone:  (312) 861 2000
Facsimile:  (312) 861 2200

*Attorneys for Hitachi, Ltd., Hitachi America, Ltd., Hitachi Data Systems Corporation, and Hitachi Computer Products (America), Inc.*

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. C 07-06511 CW

## CERTIFICATE OF SERVICE

The undersigned certifies that pursuant to Civil L.R. 5-5 and 5-6, **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT BASED UPON PATENT EXHAUSTION** and accompanying documents were filed electronically and, accordingly, was served on the following pursuant to Fed. R. Civ. P. 5(b)(2)(E):

| | |
|---|---|
| Scott R. Mosko (scott.mosko@finnegan.com) FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP Stanford Research Park 3300 Hillview Avenue Palo Alto, CA 94303 Telephone: (650) 849-6600 Facsimile: (650) 849-6666 | Vincent P. Kovalick (vince.kovalick@finnegan.com) Christopher T. Blackford (christopher.blackford@finnegan.com) FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP 901 New York Avenue, NW Washington, DC 20001-4413 Telephone: (202) 408-4000 Facsimile: (202) 408-4400 |
| Andrew C. Sonu (andy.sonu@finnegan.com) FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP Two Freedom Square 11955 Freedom Drive Reston, VA 20190 Telephone: (571) 203-2749 Facsimile: (202) 408-4400 | Peter H. Kang (pkang@sidley.com) Marc R. Ascolese (mascolese@sidley.com) SIDLEY AUSTIN LLP 555 California Street Suite 2000 San Francisco, CA 94104-1715 Telephone: 415-772-1200 Facsimile: 415-772-7400 |

Thomas N. Tarnay (ttarnay@sidley.com)
SIDLEY AUSTIN LLP
717 N. Harwood
Suite 3400
Dallas, TX 75201
Telephone: 214-981-3300
Facsimile: 214-981-3400

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 6, 2009 in Chicago, Illinois.

/s/ Matthew J. Hertko

Matthew J. Hertko